586 So.2d 466 (1991)
Christopher BREEDLOVE, Appellant,
v.
In re the ESTATE OF Wilmer BREEDLOVE, Deceased, Appellee.
No. 91-558.
District Court of Appeal of Florida, First District.
September 23, 1991.
Marva A. Davis, of Marva A. Davis, P.A., Quincy, for appellant.
Joann G. Slay, of Harnett, Curry and Slay, Quincy, for appellee.
WIGGINTON, Judge.
Wilmer Breedlove died intestate. He was survived by Christopher Breedlove and by his brothers and sisters. He was also survived by his former wife, Leona, from whom he had recently been divorced.
Following Wilmer's death, Christopher Breedlove claimed ownership of Wilmer's property on the basis that he was Wilmer's illegitimate son born by Mary White Johnson, a former employee of Wilmer. In claiming ownership of the property, Christopher gave Leona Breedlove a life estate in the property. However, Wilmer Breedlove's brother, Ben Breedlove, petitioned to administer Wilmer's estate. Ben obtained letters of administration and sought to evict Leona from the property. Christopher filed a timely objection to the petition and sought removal of Ben as personal representative, the revocation of the letters of administration and the appointment of Leona as the successor personal representative. Additionally, Christopher petitioned the court to adjudicate his paternity, to determine the heirs of Wilmer Breedlove, and to declare himself a lineal descendant of Wilmer Breedlove.
Ben Breedlove moved to dismiss Christopher's claims contending, in essence, that Christopher was not a lineal descendant within the meaning of section 732.108, Florida Statutes (1989). The court considered the pleadings and papers filed by the parties, and memoranda of law in support of their positions. The parties stipulated to include in the record depositions of Christopher and his natural mother Mary White Johnson.
Pertinent to the issues raised in this appeal is the portion of the court's order concluding that Christopher had not established that he had been virtually adopted by Wilmer Breedlove, and that the doctrine of "virtual legitimation" does not exist in *467 Florida law. The court therefore denied Christopher's claims and actions.
We affirm the trial court's order to the extent that the facts did not establish "virtual adoption" and that "virtual legitimation" does not exist as a distinct doctrine in Florida law. However, in denying Christopher's petition to have himself declared a lineal descendant of Wilmer Breedlove, the trial court apparently did not consider section 732.108(2)(b) which provides that a person born out of wedlock is a lineal descendant of his father if "[t]he paternity of the father is established by an adjudication before or after the death of the father." Thus, by virtue of that subsection, the putative heir, for purposes of intestate succession, may prove paternity by evidence other than a written acknowledgment of paternity by the father or the marriage of the natural parents before or after the birth of the person born out of wedlock. See section 732.108(2)(a) and (c). However, the standard of proof under section 732.108(2)(b) should be clear, strong and unequivocal, that is, the person born out of wedlock should prove paternity by clear and convincing evidence. See In re Estate of Odom, 397 So.2d 420 (Fla. 2d DCA 1981). Since the trial court did not consider the evidence in terms of section 732.108(2)(b), we reverse and remand the cause for the trial court to reconsider this issue. An evidentiary hearing for such purpose may be held.[1]
REVERSED and REMANDED for further proceedings consistent with this opinion.
SMITH and KAHN, JJ., concur.
NOTES
[1] Because of our disposition of this case in this manner, we do not reach Christopher Breedlove's point challenging the constitutionality of section 732.108 on the basis that it allegedly denies equal protection of law to illegitimate children. But see In re Estate of Burris, 361 So.2d 152 (Fla. 1978), wherein the supreme court held the predecessor statute, section 731.29(1), unconstitutional for restricting an illegitimate child's right to inherit intestate property of its natural father's estate, but noted that the statute had been amended by the legislature to add subsection (b) to allow an illegitimate child to take an intestate share if the paternity of the child was adjudicated either before or after the death of the father.